UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGIL L. HENDRICKSON,                          Case No. 11-14047

            Plaintiff,                          Sean F. Cox
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 11)**

**I.    PROCEDURAL HISTORY**

    A.    Proceedings in this Court

On September 16, 2011, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt.10, 11).

    B.    Administrative Proceedings

Plaintiff filed the instant claims on April 2, 2008 , alleging that he became

unable to work on April 30, 2007.  (Dkt. 7-5, Pg ID 174-176).  The claim was

initially disapproved by the Commissioner on June 19, 2008.  (Dkt. 7-4, Pg ID

101-).  Plaintiff requested a hearing and on October 1, 2009, plaintiff appeared

with counsel before Administrative Law Judge (ALJ) Truett M. Honeycutt, who

considered the case *de novo*.  In a decision dated December 1, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 31-39).  Plaintiff requested

a review of this decision on January 18, 2010.  (Dkt. 7-2, Pg ID 29).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 7-2, Pg ID 21-22), the Appeals Council, on August 29,

2011, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 18-20).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing.  (Dkt. 7-2, Pg ID 54).  Plaintiff's relevant work history included approximately 1.5 years as sandblaster in 2006-2007.  (Dkt.7-2, Pg ID 38).  In denying plaintiff's claims, defendant Commissioner considered bipolar disorder as possible bases of disability.  (Dkt. 7-2, Pg ID 36).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since February 27, 2008.  (Dkt. 7-2, Pg ID 36).  At step two, the ALJ found that plaintiff's bipolar disorder was "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.*  At step four, the ALJ found that plaintiff could perform his previous work as a sandblaster and as a motor vehicle assembler.  (Dkt. 7-2, Pg ID 39).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform his past relevant work.  (Dkt. 7-2, Pg ID 39).

### B.    Plaintiff's Claims of Error

Plaintiff's primary argument is that his "moderate" difficulties in social functioning and in concentration, persistence or pace were not properly accounted

for in the hypothetical question when the ALJ limited plaintiff to "unskilled work."  Additionally, plaintiff also argues that the ALJ's hypothetical questioning produced conflicting vocational expert testimony and the testimony was based on a flawed definition of the term "moderate."  According to plaintiff, although the ALJ's hypothetical question accounted for limitations found in a state agency psychologist's mental residual functional capacity analysis, the ALJ received conflicting testimony from the VE based on this evidence and the VE's testimony was "corrupted" by the ALJ's flawed definition of the term "moderate."

The VE testified that the plaintiff would be capable of performing his past relevant work if the only limitation was to "unskilled work."  (Tr. 64).  However, when the ALJ asked the expert whether "moderate" limitations in the ability to perform activities on a schedule, maintain regular attendance and be punctual within customary limits, the VE testified, "those are important."  (Tr. 63).  The VE also testified that a "moderate" limitation in the ability to concentrate for extended periods would depend on whether the plaintiff retains the ability to carry out concentration on "simple repetitive SVP 2 tasks."  (Tr. 63).  Further, in response to whether a "moderate" impairment in the ability to work in coordination or proximity to others without being distracted by them would impact plaintiff's past relevant work, the VE testified that although plaintiff's past work does not require ongoing contact with others, "there may be others around."  (Tr. 63).  The ALJ

then verified with the VE that the two most significant limitations contained in the
mental RFC provided by the state agency psychologist were "moderate"
difficulties in maintaining attention and concentration and "moderate" difficulties
in performing within a schedule, maintaining regular attendance and being
punctual. (Tr. 64).

However, according to plaintiff, the ALJ provided a flawed definition of
"moderate," without providing a basis for such a definition. The ALJ improperly
defined "moderate" as "although it is observably below average, is at least
minimally satisfactory in respect to function." The VE then testified that based on
this definition of "moderate," a person with limitations as outlined in the mental
RFC assessment, contained at Exhibit 4F in the administrative record, would be
capable of performing the plaintiff's past relevant work. (Tr. 65, 67). According
to plaintiff, nowhere within the Social Security regulations or case law is
"moderate" defined, let alone defined as "at least minimally satisfactory in respect
to function." Plaintiff argues that the ALJ's inclusion of his own definition of
"moderate" essentially bound the VE's to the final response. The ALJ provided a
definition of the term "moderate" to the VE that could only yield one response,
that based on such a definition, a person who is performing at a minimum level of
satisfaction can still perform work. Plaintiff suggests that since it was the medical
expert's opinion which the ALJ relied on in determining that plaintiff suffers from

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047

"moderate" limitations in concentration, persistence or pace, the ALJ could elicit a definition of the term "moderate" from the medical expert on remand.

Plaintiff objects to the ALJ's adoption of Dr. Smith's conclusion that plaintiff could perform "unskilled" work. Although the ALJ states that both medical experts conclude that plaintiff could perform "unskilled" work, according to plaintiff, this conclusion is an administrative finding reserved for the commissioner. Just as the ALJ is not a medical expert, medical experts are not capable of making a determination as to whether or not someone can work pursuant to Social Security Disability regulations. Opinions on whether a person can work are no longer "medical opinions." *See* 20 C.F.R. § 404.1527(e). Therefore, plaintiff argues that the ALJ should have explained why his "moderate" limitations in concentration did not prevent him from doing a full range of "unskilled" work and why plaintiff's RFC would not have been further limited considering the full findings of the medical experts.

C.   Commissioner's Motion for Summary Judgment

According to the Commissioner, although the ALJ did not formally incorporate all the limitations from the testifying medical expert opinion into the RFC, the decision indicates that the ALJ accounted for those limitations in determining whether plaintiff's functioning was compatible with his past work. (Tr. 22). In finding that plaintiff could return to his past work, the ALJ explicitly

stated that plaintiff could perform that work because it would not be precluded by the limitations recognized by Dr. Smith, the medical expert.  (Tr. 22).  The Commissioner argues that the fact that the ALJ only included a limitation to "unskilled work" in the RFC is not reversible error because the ALJ's decision as a whole reflects that the ALJ accounted for the additional limitations described by Dr. Smith.

The Commissioner also argues that even if the ALJ had not referenced Dr. Smith's testimony in his decision, there would be no reversible error because the ALJ included the limitations identified by Dr. Smith in the hypothetical question. Specifically, the ALJ posed numerous questions to the VE based on Dr. Smith's testimony regarding plaintiff's mental limitations and the VE testified that they would not be work preclusive.  Even if those limitations had not been incorporated into the ALJ's decision, the Commissioner argues that there is no reversible error.

Plaintiff also argues that the ALJ erred in adopting findings by medical experts that he could perform unskilled work because whether a claimant can perform unskilled work is an issue reserved to the Commissioner.  The Commissioner acknowledges that plaintiff is correct that whether a claimant is unable to work is an issue reserved to the Commissioner and opinions on that issue are not given any special significance.  However, according to the Commissioner, the statement that plaintiff could perform unskilled work is best

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047

read as an opinion that plaintiff was capable of work with certain qualities.  As explained at 20 C.F.R. § 416.968(a), unskilled jobs require "little or no judgment to do simple duties that can be learned on the job in a short period of time." Regardless, even if Dr. Beshara had stated that plaintiff could work, the ALJ could adopt such an assessment.  The fact that such statements are not medical opinions and are on an issue reserved to the Commissioner means only that they are not entitled to "any special significance."  *See* 20 C.F.R. § 416.927(e)(3). The Commissioner contends that there is no authority to prevent an ALJ from considering and accepting such a statement.  Indeed, according to Social Security Ruling 96-5p, an ALJ is obligated to consider a statement by a treating medical source on an issue reserved to the Commissioner.  Thus, even if Dr. Beshara's statement that plaintiff could perform unskilled work was on an issue reserved to the Commissioner, the ALJ did not err in considering and adopting it.

The ALJ adopted the opinions regarding plaintiff's mental limitations from Dr. Beshara, who provided a written opinion, and Dr. Smith, the medical expert who testified at the hearing.  (Tr. 22).  Although both experts ultimately concluded that plaintiff could perform unskilled work, their opinions differed in other respects.  The Commissioner contends that, regardless, the ALJ posed questions to the VE based on both opinions and the VE testified that plaintiff could perform his past work as a sandblaster given either opinion.  Thus, substantial evidence

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047

supports the ALJ's finding that plaintiff's mental limitations would not prevent

him from performing his past work.  The ALJ asked the VE questions regarding

whether a person with plaintiff's vocational profile could perform his past work

with the limitations identified by Dr. Beshara in the "Functional Capacity

Assessment" portion of his opinion.  (Tr. 62-64).  Of the moderate limitations

described by Dr. Beshara, the VE indicated that the only restrictions that caused

any concern were the moderate limitations in maintaining attention and

concentration for extended periods, at least with respect to simple repetitive work,

and in maintaining regular attendance, performing within a schedule, and being

punctual.  (Tr. 64).  Then, the ALJ defined the term "moderately limited" as

meaning observably below average and at least minimally satisfactory with respect

to functioning.  (Tr. 65).  The ALJ then asked whether a person with plaintiff's

vocational profile could perform his past work if he had the limitations identified

in the "Functional Capacity Assessment" portion, as well as the "preliminary

matters."  (Tr. 67, 349-51).  According to the Commissioner, by phrasing the

question in this manner, the ALJ included all of the limitations identified by Dr.

Beshara on the "Mental Residual Functional Capacity" form.  (Tr. 67, 349-51).

Even with such limitations, the VE testified that such a person could perform

plaintiff's past work.  (Tr. 67).

      In addition, the Commissioner points out that the ALJ asked Dr. Smith to

compare his conclusions to those of Dr. Beshara. (Tr. 70-71). By eliminating certain limitations in Dr. Beshara's opinion, Dr. Smith indicated that plaintiff had moderate impairments in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and work in coordination with or close proximity to others without being distracted. (Tr. 71). The ALJ then questioned the VE and Dr. Smith together to determine whether plaintiff's past work could be performed by a person with the limitations identified by Dr. Smith. The VE testified that plaintiff's job as a sandblaster would be simple and repetitive work requiring attention and concentration for at least two hours at a time, and Dr. Smith testified that this type of concentration could be maintained on a sustained basis if the person at issue had a 30 minute lunch break and two 15 minute breaks. (Tr. 73-74). The VE testified that the sandblaster job was performed independently with infrequent interaction with a supervisor, and Dr. Smith testified that those types of social interactions could be performed. (Tr. 74-75). The VE earlier testified that the sandblaster job could be performed by a person with moderate limitations in understanding, remembering, and carrying out detailed instructions. (Tr. 62). Therefore, the Commissioner concludes that the limitations identified by Dr. Smith would be fully compatible with plaintiff's past work. Thus, the Commissioner urges the Court to conclude that substantial evidence supports the

ALJ's finding that plaintiff could work as a sandblaster under both Dr. Beshara's and the ME's assessments of his abilities.

The Commissioner also argues that, even if the ALJ impermissibly defined the term "moderate" for the VE, any such error would only effect the VE's testimony with respect to Dr. Beshara's opinion, and not the ME's opinion. As described by the Commissioner, the ALJ simultaneously questioned Dr. Smith and VE regarding the limitations that were most relevant to plaintiff's past work. (Tr. 73-75). That questioning did not involve the term "moderate," but rather, included even more concrete limitations. Thus, according to the Commissioner, plaintiff's argument is unavailing on this basis alone. Regardless, the Commissioner contends that the ALJ did not err in defining the term "moderate" for the VE. According to the Commissioner, there is no support for plaintiff's claim that the ALJ could not interpret the term "moderate" as used in the regulations. Indeed, the Agency's interpretation of its regulations is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulations. The Commissioner contends that plaintiff incorrectly suggests that the ALJ's definition of "moderate" rendered the limitations meaningless. While some jobs could be performed by a person with below average abilities that meet the minimal levels of acceptability, it is unreasonable to conclude that every job would accept such a low level of performance from an employee. It is common sense that some

jobs would require at least average abilities in areas such as concentration and social interaction. Thus, the Commissioner urges the Court to reject plaintiff's contentions and affirm the decision below.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

    If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

      "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

      If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

In this case, the ALJ concluded that plaintiff had the severe impairment of bipolar disorder.  The ALJ also accepted the testimony of Dr. Smith, the medical expert who testified at the hearing regarding the PRTF, concluding that the B criteria and the C criteria were not satisfied.  Plaintiff does not object to this conclusion.  As the ALJ explained, the limitations identified in paragraph B are not an RFC, but rather, are used to rate the severity of the mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraph B of the adult mental disorders listings.  It is this aspect of the ALJ's assessment to which plaintiff objects.

The ALJ first broadly concluded that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitation of "unskilled specific vocational preparation."  While this broad statement may not appropriately reflect the ALJ's consideration of plaintiff's specific mental impairments, the undersigned concludes that, on closer examination, the ALJ fully explored plaintiff's mental impairments and appropriately questioned the VE in this regard, concluding more specifically that

plaintiff was able to perform his past work, which is classified as "unskilled."  As the ALJ pointed out in his decision, he relied on the expert testimony from Dr. Smith, who generally agreed with the findings of the consultative examiner that there was nothing in the record showing that plaintiff was precluded from performing unskilled work as set forth in Exhibit 4F.  Exhibit 4F is not limited to the statement that plaintiff was able to perform "unskilled work" and Dr. Smith's testimony is not so limited either.  Specifically, Dr. Smith testified that plaintiff would not have any problem dealing with simple tasks.  (Dkt. 7-2, Pg ID 86).  In examining the conclusions contained in Exhibit 4F, Dr. Smith also testified that plaintiff was not significantly impaired in his ability to perform activities within a schedule, maintain attendance and be punctual, or respond appropriately to changes in the work setting.  (Dkt. 7-2, Pg ID 88).  He did find plaintiff to be moderately limited in his ability to deal with the public and agreed that he was moderately limited in his ability to maintain attention and concentration for extended periods.  (Dkt. 7-2, Pg ID 88-89).

After questioning Dr. Smith regarding the specific categories in the MRFCA, the ALJ turned to the VE and questioned her regarding the attention and concentration requirements for the sandblaster job.  She indicated that the attention and concentration that would have to be maintained for the sandblaster job was "at least two hours at a time."  The ALJ clarified "at least but – simple and

repetitive?" and she said "yes." (Dkt. 7-2, Pg ID 90). The ALJ then questioned Dr. Smith as to whether that type of concentration could be maintained on a sustained basis if the person had two 15 minute breaks and a 30 minute lunch break per day (which the VE indicated was typical for this job). Dr. Smith responded "yes." (Dkt. 7-2, Pg ID 90-91). Based on this testimony, the ALJ concluded in his written decision that plaintiff was able to perform his past relevant unskilled work and "would not be precluded by the limitations recognized by the medical experts or expressed in exhibit 4F." (Dkt. 72, Pg ID 39).

Plaintiff argues that the VE was not sufficiently aware of the plaintiff's attention and concentration deficits and that the hypothetical question, by defining a "moderate" impairment as "although it is observably below average, it is at least minimally satisfactory in respect to function," essentially forced the VE to testify that plaintiff could perform his past work. (Dkt. 7-2, Pg ID 82). According to plaintiff, because of this definition, when the ALJ asked the VE if a person with plaintiff's education and work background, no physical limits "but [who] had mental limits that are defined in 4F-3 and even using the preliminary matters, would appear capable of work performing the past work, right Ms. Skinner?", the VE could offer no response other than "right." (Dkt. 7-2, Pg ID 84). Plaintiff admits that he has no legal authority in support of the theory that the ALJ was not permitted to formulate such a definition of "moderate" and the Commissioner

offers none to the contrary, arguing instead that there is nothing in the statute,

regulations or case law suggesting that the ALJ is not permitted to do so.  The

undersigned was not able to find any specific authority in this circuit, however,

there is significant authority from courts outside this circuit addressing this very

issue.

Specifically, the Fifth Circuit, albeit in an unpublished opinion, upheld the

use of the following definition of "moderate":  "there are some moderate

limitations, but the person can still perform the task satisfactorily."  *Cantrell v.*

*McMahon*, 227 Fed.Appx. 321, 322 (5th Cir. 2007).  The court acknowledged that

the term "moderate" is not defined in the regulations or the Program Operations

Manual System, it concluded that the plaintiff failed to show that the ALJ's

definition *conflicted* with either authority.  The court concluded that the ALJ's

definition of "moderate" was not used in a manner that was inconsistent with the

regulations.  Additionally, the court concluded that there was substantial evidence

that the vocational expert understood the degree of limitation at issue in assessing

the level of work a person with the plaintiff's RFC could perform.  *Id.  See also,*

*Giles v. Astrue*, 433 Fed.Appx. 241 (5th Cir. 2011) (Upholding use of following

definition for "moderate": "that there are more than slight limitations but the

person can still perform the task satisfactorily.").  Other courts have reached the

same conclusion.  For example, in *Barber v. Astrue*, 2012 WL 3230469, *14

(W.D. Ark. 2012), citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006), the court observed that while "moderate" is not defined in the regulations, it is "commonly defined on paperwork prepared by the agency as meaning that the individual is still able to function satisfactorily." In *Barber*, the court concluded that the ALJ's definition of moderate was in alignment with the definition of the term "as it is widely used in the social security litigation area." *Id.* This definition appears to be in use within the Sixth Circuit as well, although not the subject of any significant dispute or analysis of the propriety of its use. *See e.g.*, *Richie v. Astrue*, 2010 1416761, *1 (E.D. Ky. 2010) (ALJ defined "moderate" as a "limitation in an area, but the individual is still able to function satisfactorily.").

In the view of the undersigned, regardless of the propriety of the definition of "moderate" used by the ALJ, it is abundantly clear from the record that the VE understood the extent of plaintiff's concentration and attention limitation. Dr. Smith opined, as set forth on Exhibit 4F, that plaintiff was moderately impaired in his ability to "maintain attention and concentration for extended periods." The VE testified that the sandblaster job required attention and concentration for two hours at a time. Dr. Smith testified that plaintiff's moderate limitation in maintaining attention and concentration for *extended periods* would not significantly affect his ability to maintain attention and concentration for two hours at a time, given the breaks such a job would have. The ALJ ultimately concluded that plaintiff was

not precluded from performing his *past* unskilled work as a sandblaster by any of the limitations set forth in Exhibit 4F.  Thus, the ALJ's conclusions are supported by substantial evidence and he appropriately relied on the VE's testimony.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 16, 2012                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on August 16, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John M. Brissette, Judith E. Levy, AUSA, and the Commissioner of Social Security.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7850
                                         tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Hendrickson v. Comm'r*; Case No. 11-14047